UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:17-cr-412-T-36AAS

DEVANTE MORENO SMITH
_____/

**O R D E R**

      This matter comes before the Court upon Defendant Devante Moreno Smith's Emergency Motion to Reduce Sentence (Doc. 68), and the United States' Response in Opposition to Defendant's Motion for Compassionate Release or Reduction of Sentence and Home Confinement (Doc. 71). In the motion, Defendant requests the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to modify his term of imprisonment to time served and to impose a special condition allowing Defendant to serve a period of home confinement on supervised release. Doc. 68 at 1. Defendant contends that the request is made to protect himself from the coronavirus 2019, or COVID-19, and because he has underlying and pre-existing health problems that place him in the high-risk category. *Id.* The Government responds that the motion should be denied because the Court lacks the authority to issue an order directing the Bureau of Prisons ("BOP") to transfer Defendant to home confinement, Defendant has not exhausted administrative remedies, no evidence supports the assertion that Defendant's medical condition is severe enough to warrant compassionate release, and the BOP has an action plan to minimize the risk of transmission. Doc. 71 at 1-2. The Court, having considered the motion and being fully advised in the premises, will deny Defendant's motion.

**I.     BACKGROUND**

Defendant Devante Moreno Smith pleaded guilty to possession with intent to distribute 500 grams or more of a mixture or substance containing a detectible amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a).  Doc. 19.  Defendant was sentenced on January 31, 2019 to a term of imprisonment of seventy-seven months followed by four years of supervised release.  Doc. 62.

On April 30, 2020, Defendant filed the instant motion stating that he is at high risk for becoming very sick should he contract COVID-19 because he suffers from severe asthma requiring the daily use of an inhaler.  Doc. 68 ¶¶ 3-4.  Defendant states that it is not possible to maintain a safe social distance at FCI Coleman Low, where he is incarcerated.  *Id.* ¶ 8.  Additionally, FCI Coleman Low has had one staff member and one inmate test positive for the virus.  *Id.* ¶ 9.  Defendant argues that the pandemic, combined with his asthma, provide extraordinary and compelling reasons to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) to permit his immediate release to home confinement.  *Id.* ¶¶ 15-16.

The Government responds that the BOP has taken measures to limit the spread of COVID-19, including exercising greater authority to designate inmates for home confinement.  Doc. 71 at 3-8.  The Attorney General directed the BOP "to prioritize the use of statutory authority to place prisoners in home confinement."  *Id.* at 6.  The BOP's authority "includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter . . . and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g)."  *Id.* at 6-7.  Additionally, Congress authorized the BOP to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place a prisoner in home confinement," and the Director has exercised that authority, beginning at the facilities with

the greatest incidents of coronavirus transmission. *Id.* at 7. The Government explains in its response that because Defendant is not in the last six months or 10% of his sentence and is not elderly or terminally ill, he is not being considered by the BOP for home confinement. *Id.* at 8.

The Government also asserts that the Court cannot order the BOP to place Defendant on home confinement because such designation decisions are committed solely to the BOP's discretion. *Id.* at 9. Because Defendant's request does not relate to a correction or modification of his sentence, over which courts have limited jurisdiction, but instead relates to the place of incarceration, the Government contends that the Court has no authority to grant Defendant's request. *Id.* at 10-11.

The Government further argues that the Court may not consider Defendant's request for modification of his sentence because Defendant has not followed the required administrative procedures, which require that he first make a request to the BOP. *Id.* at 11. Even if he had met this requirement, or the requirement could be waived, the Government argues that Defendant fails to meet the standard for compassionate release. *Id.* at 13-20.

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. That provision states:

The court may not modify a term of imprisonment once it has been imposed except that—

    (1) in any case—

        (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

            (i) extraordinary and compelling reasons warrant such a reduction; or

            (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

    (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.* The defendant generally bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing

4

that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, Case No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

## III.   DISCUSSION

### A.   Location of Imprisonment

The Government argues that the Court lacks the authority to direct the BOP to place Smith on home confinement.  Indeed, in *United States v. Calderon*, 801 F. App'x 730, 731-32 (11th Cir. 2020), the Eleventh Circuit stated that district courts lack authority to grant early release under the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, because "the Second Chance Act does not authorize a federal court to order the BOP to release a prisoner—the Act only states that the Attorney General '*may*' release eligible elderly offenders."  Additionally, the appellate court stated that "the Second Chance Act makes no mention of federal courts and does not grant any authority to the federal courts." *Id.* at 732.

Recently, this Court interpreted *Calderon* in reviewing a request for home confinement like the one at hand to mean that "the Court has no authority to direct the [BOP] to place [the defendant] in home confinement because such decisions are committed solely to the BOP's discretion." *United States v. Staltare*, 8:14-CR-460-T-33TBM, 2020 WL 2331256, at *1 (M.D. Fla. May 11, 2020) (citing *Calderon*, 801 F. App'x at 730).  The Court further explained that "[o]nce a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarceration to serve that sentence." *Id.* (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can recommend that the BOP place an offender in a particular facility

or program . . . [b]ut decision making authority rests with the BOP."); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]")). Anther Court has reached the same conclusion. *See United States v. Robles*, CR 3:17-343, 2020 WL 2306847, at *5 (M.D. Pa. May 8, 2020) (stating that under the CARES Act, the determination of whether inmates qualify for home confinement rests with the BOP Director, and the Court lacks authority to direct the BOP to release the defendant to home confinement).

Smith cites to no authority, statutory or otherwise, on which the Court may direct the BOP to place Smith on home confinement. In the absence of such authority, the Court cannot grant his request. Accordingly, the Court will next examine whether another basis exists for the requested relief.

      **B.**      **Compassionate Release**

To prevail on his request, Smith must demonstrate that: (1) he submitted a request for compassionate release to the BOP and either (a) the BOP denied the request and he exhausted all administrative rights with respect to that denial, or (b) the warden of his facility took no action on his request within 30 days of its receipt; and (2) extraordinary and compelling reasons warrant a reduction in his sentence. After reviewing the parties' arguments, facts presented, and applicable law, the Court finds that Smith fails to demonstrate either on the instant motion.

            **1.**      **Exhaustion of Administrative Remedies**

Smith acknowledges that the statue requires an inmate to file a request with the BOP before filing a motion with the Court, but states that "[i]n light of the time-sensitive nature of [his] application," he elected to "fil[e] the motion now so the Court has an opportunity to review the matter as quickly as possible." Doc. 68 ¶¶ 12-13. Smith recognizes that the Court may "defer ruling on [his] application until after the BOP's determination . . . or after 30 days from BOP's

receipt of [his] request," and requests that should the Court do so, it also "order BOP to release [Smith] pending a ruling on this motion." *Id.* ¶ 14.

Smith does not indicate that an application has been made to the BOP or when such application was made. The Government states that no such application has been made. Doc. 71 at 12 (stating that Smith "has failed to pursue, let alone exhaust, his administrative remedies before filing the instant motion."). The Government attached a copy of an administrative remedy log, which reflects that "no remedy data exists for" Smith. Doc. 71-1 at 1. Accordingly, at best, Smith has not shown that he exhausted his administrative remedies before making an application to the Court.

Therefore, liberally construed, Smith requests the Court to excuse or waive the administrative exhaustion or time lapse provision of § 3582(c)(1)(A). The Government opposes the request. Doc. 71 at 12. Courts around the country have been presented with the question of whether the administrative exhaustion or time provision may be waived and have reached different conclusions. A decision out of the United States District Court for the Southern District of New York, for example, recently held that the requirements were neither jurisdictional nor mandatory, and could be waived. *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020) (concluding "that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late."). Another case from the same district concluded that "[r]egardless of whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, its exhaustion requirement is clearly statutory and therefore mandatory." *Untied States v. Hart*, No 17 Cr. 248 (VSB), 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020).

7

The Supreme Court has stated that it does "not read 'exceptions into statutory exhaustion requirements where Congress has provided otherwise.' " *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)) (holding that the statutory text and history of the Prison Litigation Reform Act of 1995 did not allow for a "special circumstances" exception to the exhaustion requirement). Mindful of this precedent from the Supreme Court, and reading the language of section 3582(c)(1)(A), the Court concludes that it does not have the authority to excuse the exhaustion or lapse requirement in § 3582(c)(1)(A), even in the midst of the COVID-19 pandemic.

Section 3582(c)(1)(A) defines mandatory conditions precedent to a defendant filing a motion for compassionate release, unambiguously stating that a defendant can bring a motion to court only "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). By its plain language, §3582(c)(1)(A) mandates exhaustion. While the statute explicitly provides for one exception to exhaustion, i.e., the lapse of 30 days, it does not provide for any judicially created exceptions. Absent such a provision, Supreme Court precedent dictates that it is not within a court's discretion to waive or excuse the failure to satisfy a statute's exhaustion requirement. *See Ross*, 136 S. Ct. at 1856-57.

Further, although the Eleventh Circuit and other appellate courts have yet to squarely address whether § 3582(c)(1)(A)'s exhaustion requirement is subject to waiver or excuse in the unique circumstances of the COVID-19 pandemic, a majority of district courts have concluded that it is not. *See, e.g., United States v. Cassidy*, No. 17-CR-116S, 2020 WL 1969303, at *5 (W.D.N.Y. Apr. 24, 2020) (collecting cases and finding that § 3582(c)(1)(A)'s exhaustion

requirement must be strictly enforced and is not subject to judge-made exceptions); *United States v. McCallister*, Cr. No. 13-00320-01, 2020 WL 1940741, at *2 (W.D. La. Apr. 21, 2020) (finding that § 3852(c)(1)(A) does not provide a court with the equitable authority to excuse a defendant's failure to exhaust his administrative remedies or to waive the 30-day waiting period); *United States v. Vence-Small*, __ F. Supp. 3d __, 2020 WL 1921590, at *1 (D. Conn. Apr. 20, 2020) (concluding court lacked authority to excuse or waive § 3582(c)(1)(A)'s exhaustion or lapse requirements); *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *3 (D. Conn. Apr. 17, 2020) (concluding that § 3582(c)(1)(A)'s exhaustion requirement is mandatory and not subject to exceptions for futility or other judge-made exceptions); *United States v. Epstein*, Crim. No. 14-287 (FLW), 2020 WL 1808616, at *2-5 (D. N.J. Apr. 9, 2020) (concluding court lacked authority to excuse exhaustion in COVID-19 compassionate release case); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2-3 (E.D. Mich. Apr. 8, 2020) (finding § 3582(c)(1)(A)'s exhaustion or lapse requirement cannot be waived, "even in light of the COVID-19 pandemic."), *appeal docketed*, No. 20-1298 (6th Cir. Apr. 9, 2020); *United States v. Rivers*, 2020 WL 1676798, at *2 (D. V.I. Apr. 6, 2020) (concluding court was not permitted to waive § 3582(c)(1)(A)'s exhaustion requirement); *United States v. Woodson*, 2020 WL 1673253, at *3-4 (S.D.N.Y. Apr. 6, 2020) (concluding that because § 3582(c)(1)(A)'s exhaustion requirement is statutory, not judicial, district courts may not "waive" exhaustion); *United States v. Weiland*, 2020 WL 1674137, at *1 (S.D.N.Y. Apr. 6, 2020) (concluding court does not have authority to waive the administrative exhaustion requirement in § 3582); *United States v. Perry*, 2020 WL 1676773, at *1 (D. Colo. Apr. 3, 2020) (rejecting defendant's argument that the court could read an exception into the exhaustion requirement); *United States v. Johnson*, 2020 WL 1663360, at *6 (D. Md. Apr. 3, 2020) ("In summary, this Court will not read an exception into § 3582(c)(1) which does not exist."); *United*

States v. Carver, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020) (stating "the administrative exhaustion requirement admits of no exception" and "[t]he Court's hands are bound by the statute."); *see also United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) (declining to remand for district court to consider defendant's § 3582(c)(1)(A) motion because his failure to satisfy the statute's exhaustion requirement presented "a glaring roadblock foreclosing compassionate release at [that] point").

Likewise, the United States Court of Appeals for the Third Circuit suggested that it would not find the exhaustion requirement to be waivable. In *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020), the Government had an appeal regarding the defendant's sentence pending before the circuit court and the defendant sought to have a motion for compassionate release based on the COVID-10 pandemic considered by either the district court or circuit court. The circuit court explained that remanding the case to the district court for consideration of the compassionate-release request, while retaining jurisdiction over the Government's appeal, would be futile because the defendant had not complied with § 3582(c)(1)(A)'s exhaustion requirement. *Id.* at 1597. The Third Circuit stated that the failure to meet the exhaustion requirement "present[ed] a glaring roadblock foreclosing compassionate release at th[at] point." *Id.*

Accordingly, because Smith has not exhausted his administrative remedies, his motion must be denied.

### 2.     Extraordinary and Compelling Reasons

Even if Smith had exhausted his administrative remedies or the Court had the authority to waive exhaustion, Smith fails to demonstrate "extraordinary and compelling reasons" warranting a reduction in sentence under § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) does not define what constitutes "extraordinary and compelling reasons." 28 U.S.C. § 994(t). Instead, Congress

delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." *Id.* The Sentencing Commission's existing policy statement on compassionate release, adopted before the passage of the FSA, is U.S.S.G. § 1B1.13.[1] The application notes to § 1B1.13 identify four categories in which extraordinary and compelling circumstances may exist: (1) the defendant's medical condition; (2) the defendant's advanced age (at least 65 years old); (3) family circumstances; and (4) other reasons. U.S.S.G. § 1B1.13, cmt. n. 1(A)-(D).

Smith asserts that extraordinary and compelling circumstances exist to grant his request for compassionate release because he suffers from asthma, which puts him at increased risk of severe illness if exposed to COVID-19. Doc. 68 ¶¶ 2-3, 19. The Government counters that the existence of the COVID-19 pandemic itself is not an extraordinary or compelling reason that could justify compassionate release and that Smith did not provide any documentary support for his assertion that he suffers from severe asthma that requires the use of a daily inhaler. Doc. 71 at 15-17. The only evidence provided is a citation to Smith's self-report in the Pre-Sentence Report that he "has asthma and uses an inhaler as needed." Doc. 68 ¶ 2(a), 4.

Regardless of evidence regarding Smith's asthma, the Government contends Smith has not made a factual record that his needs will not be met while incarcerated. In support, it asserts that the BOP has taken aggressive action to mitigate the effects of COVID-19 and the facility where

---

[1] The Sentencing Commission has not updated its policy statement since the FSA was enacted. Since then, courts are split on whether § 1B1.13 continues to control. *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 350-52 (S.D. Tex. 2019), *with United States v. Ebbers*, __ F. Supp. 3d __, 2020 WL 91399, at *4 (S.D. N.Y. Jan. 8, 2020). At a minimum, however, courts have been guided by § 1B1.13's policy statement. *See, e.g., United States v. Willingham*, CR113-010, 2019 WL 6733028, at *1-2 (S.D. Ga. Dec. 10, 2019) (discussing whether the Sentencing Commission's policy statement remains an appropriate expression of policy in post-FSA compassionate release cases and addressing competing views as to whether the FSA granted courts discretion to consider what constitutes extraordinary circumstances outside of the Sentencing Commission's policy statement).

Smith is housed has the capacity to address COVID-19 cases. Doc. 71 at 18-19. The Government indicates that Coleman FCI employs a team of medical professionals and provides round-the-clock medical care. *Id.* at 18. Additionally, should Smith contract COVID-19, the Government states he will be quarantined, monitored, and receive necessary medical treatment. *Id.* at 19.

After thorough review of the parties' arguments and documentary submissions, the Court finds that Smith fails to demonstrate an extraordinary and compelling reason for compassionate release on the basis of his asthma and/or increased risk of severe illness if exposed to COVID-19 due to the same. Although Smith does not allege these reasons fall within any of the four categories set forth in the application notes to § 1B1.13, only the first and fourth categories appear relevant.[2]

The first category provides that an extraordinary and compelling reason exists when the defendant is: (1) suffering from a terminal illness, i.e., a serious and advanced illness with an end of life trajectory; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care for himself within the prison environment and from which he is not expected to recover. U.S.S.G. § 1B1.13, cmt. n. 1(A). Smith, however, does not allege a terminal illness or that his asthma substantially diminishes his ability to care for himself in prison. Nor does he submit documentary evidence demonstrating that he suffers from severe asthma. As such, Smith fails to demonstrate that his asthma constitutes an extraordinary and compelling reason warranting relief. *See Hamilton*, 715 F.3d at 337 (defendant, as movant seeking relief under 18 U.S.C. § 3582(c)(2), bears burden of establishing entitlement to requested relief); *see also Heromin*, 2019 WL 2411311, at *2 (denying motion for compassionate release due to a lack of corroborating medical evidence).

---

[2] Cmt. n. 1(B) and (C) are inapplicable. Cmt. n. 1(B) requires that the defendant be at least 65 years old; Smith is in his late 20s. Cmt. n. 1(C) addresses family circumstances, and Smith alleges none.

The fourth category provides that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n. 1(D). Assuming, without deciding, that the FSA grants courts discretion to consider what constitutes an extraordinary and compelling reason outside of the Sentencing Commission's policy statement, the Court finds that Smith similarly fails to demonstrate an extraordinary and compelling reason under this catch-all provision.  Here, Smith alleges a combination of his circumstances, i.e., asthma and concerns over possible exposure to COVID-19, constitute an extraordinary and compelling reason.  The Court disagrees.  As addressed above, Smith fails to demonstrate that his asthma constitutes an extraordinary and compelling reason.  Moreover, general concerns about possible exposure to COVID-19 do not meet the criteria for an extraordinary and compelling reason under U.S.S.G. § 1B1.13.  *See Eberhart,* 2020 WL 1450745, at *2; *see also United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding defendant failed to show that concerns about the spread of COVID-19, without other factors to consider in his particular case, presented an extraordinary and compelling reason warranting his release from prison).[3]  Moreover, Smith does not make any particular showing that his individual conditions of confinement—as opposed to those conditions that inmates generally are subject to—justify relief.

---

[3] The Court notes that a limited number of courts have granted compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on individual medical conditions that made the inmates particularly susceptible to COVID-19 where the inmates were near the end of their sentences. *See, e.g., United States v. Campagna*, No. 16 Cr. 78-01(LGS), 2020 WL 1489829, at *3 (S.D. N.Y. Mar. 27, 2020) (finding defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constituted an extraordinary and compelling reason to reduce his sentence by four months and the government did not oppose the reduction); *United States v. Jepsen*, No. 3:19-cv-73(VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (finding that the totality of the circumstances—defendant had less than eight weeks left to serve, he was immunocompromised and suffered from multiple chronic conditions that predisposed him to potentially lethal complications if he contracted COVID-19, and government consented to his release— constituted extraordinary and compelling reasons to grant request); *United States v. Colvin*, No. 3:19cr179(JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (defendant had diabetes and high blood pressure and only eleven days remaining on her sentence).

While Smith alleges he suffers from asthma, he does not allege he has been unable to receive treatment at his facility or that the plan proposed by the BOP is inadequate to manage the pandemic within his facility should the need arise. On this record, Smith fails to demonstrate that his asthma coupled with the possibility of COVID-19 constitutes an extraordinary and compelling reason under 18 U.S.C. § 2385(c)(1)(A) and U.S.S.G. § 1B1.13. *See Hamilton*, 715 F.3d at 337.

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. Defendant Devante Moreno Smiths' Emergency Motion to Reduce Sentence (Doc. 68) is **DENIED** without prejudice to filing a motion upon exhaustion of his administrative remedies.

**DONE AND ORDERED** in Tampa, Florida on May 15, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any